# EXHIBIT "1"

TERRENCE A. BEARD, State Bar No. 98013
TBeard1053@aol.com
LAW OFFICES OF TERRENCE A. BEARD
3240 Lone Tree Way, Suite 101
Antioch, CA 94509
(925) 778-1060

Attorneys for Plaintiff TIMOTHY CHERRY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 12 2017

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA

TIMOTHY CHERRY,

　　　　　Plaintiff,

vs.

DOMETIC CORPORATION, a Delaware
corporation, and　　DOES 1 to 50,
inclusive,

　　　　　Defendants.
_____/

No: **BC 675585**

**COMPLAINT FOR DAMAGES**

1). 　Strict Liability

2). 　Negligence

3). 　Negligence - Post-Sale Duty to Warn

4). 　Negligence - Post Sale Duty to Conduct Adequate Recall/Retrofit

5). 　Negligence Per Se

By Fax

1

**COMPLAINT FOR DAMAGES**
Cherry vs. Dometic Corporation.

1   Plaintiff alleges:

2                            **PARTIES**

3   **Plaintiffs:**

4   1.    Plaintiff  TIMOTHY  CHERRY  is,  and  at  all  times  mentioned  herein  was,  an

5         individual and resident of the City of Castaic, County of Los Angeles, California.

6         At all times relevant hereto, Plaintiff  owned a 2007 Weekend Warrior toy hauler

7         trailer,  VIN No. 5HRFF32357C018618 (hereinafter the "RV"), equipped with a

8         Dometic Model RM 2852 gas absorption refrigerator, installed as original equipment

9         (hereinafter the "REFRIGERATOR").

10  **Defendants:**

11  2.    Defendant DOMETIC CORPORATION ("Dometic"),  at all times mentioned herein,

12        was a corporation organized and existing under the laws of the state of Delaware,

13        with its headquarters and principal place of business at 13551 Triton Park Blvd., Suite

14        1000, Louisville, Kentucky 40223.   Dometic is authorized to transact business and

15        is  doing  business  in  California.  Dometic's  principal  business  is  the  design.

16        manufacture, sale, and distribution of gas absorption refrigerators for installation in

17        recreational  vehicles  and  boats.    Plaintiff  is  informed  and  believes,  and  thereon

18        alleges, that Dometic - either directly or in conjunction with affiliated and/or related

19        companies - designed, manufactured, assembled, marketed, sold, distributed and/or

20        otherwise placed the REFRIGERATOR into the stream of commerce.   Plaintiff is

21        further informed and believes, and thereon alleges, that Dometic - either directly or

22        in conjunction with affiliated and/or related companies - acquired the assets and

23        assumed the liabilities of previous entities engaged in the design and manufacture of

24        Dometic-branded gas absorption refrigerators and component parts.   At all times

25        since said acquisition, Dometic has continued the design, manufacture, assembly, sale

26        and distribution of said products, thereby assuming liability for defects in Dometic-

27        branded  gas  absorption  refrigerators  designed  and  manufactured  by  Dometic's

28

1    predecessor or affiliate entities, including, but not limited to, the REFRIGERATOR.

2    3.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein

3          as DOES 1 to 50, inclusive, and therefore sues these Defendants by such fictitious

4          names.   Plaintiff will amend this Complaint to allege the true names and capacities

5          of these Defendants when they are ascertained.

6    4.    Plaintiff is informed and believes and thereon alleges that each of the Defendants,

7          including the fictitiously named Defendants, are responsible in some manner for the

8          occurrences alleged herein, and that Plaintiff's damages were proximately caused by

9          their conduct.   Plaintiff is further informed and believes and thereon alleges that the

10         Defendants, and each of them, including the fictitiously named Defendants, were the

11         agents, servants and employees of their co-Defendants, and in doing the things

12         hereinafter alleged, were acting in the course and scope of their authority as such

13         agents, servants and employees, and with the permission and consent of their co-

14         Defendants.

15   5.    Each Defendant, including fictitiously-named Defendants, herein alleged to have

16         committed any affirmative act, did and committed the same pursuant to a common

17         plan and scheme among all the Defendants herein named, including the fictitiously

18         named Defendants, and did so as a co-conspirator and as the agent for each and all

19         of his or her co-Defendants and pursuant to and in furtherance of such Defendants'

20         conspiracy, common plan and scheme.

21   6.    Whenever reference is made in this Complaint to "Defendants" or to "Dometic"

22         doing any act, such allegation shall be deemed to mean the act of each Defendant,

23         including each fictitiously-named defendant, acting individually, jointly and severally,

24         and the conspiring of these Defendants with each other to so act.

25   **GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

26   7.    Plaintiff is informed and believes and thereon alleges that beginning at least in 1996,

27         and continuing thereafter, Defendants, and each of them, and/or their predecessors in

28

3

**COMPLAINT FOR DAMAGES**
Cherry  vs. Dometic Corporation.

interest, designed, manufactured, assembled, marketed, sold and otherwise placed Dometic-branded gas absorption refrigerators into the stream of commerce for use in recreational vehicles and boats.   The gas absorption refrigerators came in various sizes, including 6 cu ft. (RM/DM2652, RM/DM2662 & RM/DM2663, RM/DM 3662 and RM/DM 3663); 8 cu ft. (RM/DM2852, RM/DM2862, RM/DM3862, RM3863); 9.2 cu ft. (NDM1062), and 12 cu. ft. (RM 1350).   All of these refrigerator models shared the same gas absorption technology, which involved a process whereby a solution of ammonia, water, sodium chromate and hydrogen gas is heated by electricity or propane until it boils (approximately 400 degrees Fahrenheit), releasing ammonia gas.   The gas circulates through a series of tubes at approximately 450 psi.   As the ammonia gas is first condensed to a liquid, and then evaporated through interaction with the hydrogen gas, heat is removed from the refrigerator box, causing the temperature in the box to decrease and providing the refrigeration effect.   The series of tubes is referred to as a "cooling unit", and includes the heat source (propane and electric), as well as a condenser, evaporator, absorber and solution tank.

8.   The Defendants have admitted that the cooling units used on their Dometic-branded gas absorption refrigerators contain identical design and/or manufacturing defects that cause leaks of flammable, toxic and carcinogenic chemicals, and fires.   The Defendants have initiated two (2) product safety recalls of its 6, 8 and 9.2 cu. ft. two-door refrigerators through the National Highway Traffic Safety Administration (NHTSA) - one in 2006 (NHTSA No. 06E-076) and one in 2008 (NHTSA No. 08E-032).   Both recalls  involved the same defect in the refrigerator cooling units, misleadingly described by Defendants as a "fatigue crack" that results in a "loss of cooling solution".  In fact, the common defect shared by all Defendants' 6, 8, 9.2 and 12 cubic foot models of gas absorption refrigerator was a propensity for the steel tubing used in the cooling units to corrode from the inside, causing thinning of the walls of the steel tubing.   The corrosion was, and is, the result of the common design

of the boiler tube assembly of the refrigerator cooling units, which concentrated the transfer of heat generated by the electric heaters in a very small area of the thin-walled steel tubing. This concentration of heat - when combined with the stresses introduced into the tubing during the fabrication and manufacturing process, and the stresses placed on the tubing during normal operation of the refrigerators - namely, high temperature, high pressure, steep temperature gradients, cyclic stress, and chemical interaction of the corrosive cooling solution - resulted in cooling units that were prone to develop corrosion leading to microscopic pits and cracks on the interior surface of the "boiler tube" - the section of the cooling unit where the electric heat inputs are welded to the cooling unit, and where the boiler tube is dimpled to hold an interior "percolator tube". Once the corrosion starts, it is a mechanical process which eats away at the interior surface of the cooling unit boiler tube, regardless of whether the refrigerator is operating or not. The cracks and pits caused by the corrosion eventually thin the wall of the boiler tube to the point where the remaining steel can no longer withstand the normal internal pressures inherent in the design of the Dometic-branded gas absorption refrigerators, causing through-wall cracks of the boiler tube.

9. The sodium chromate component of the cooling solution in Dometic-branded gas absorption refrigerators, including the REFRIGERATOR, is a Level 1 carcinogen. The American Conference of Governmental Industrial Hygienists (ACGIH) has classified the carcinogenic effects of sodium chromate as A1 - confirmed for humans. The International Agency for Research on Cancer (IARC) has classified the carcinogenic effects of sodium chromate as Level 1 - proven for humans. The State of California has listed sodium chromate as a chemical known to the State to cause cancer and reproductive harm in humans - requiring a Proposition 65 warning - since February 27, 1987. Sodium chromate is corrosive, and may be fatal if absorbed through the skin. If inhaled, it causes respiratory tract irritation, and is destructive

1    to the tissues of the mucous membranes and upper respiratory tract in humans.

2    Inhalation risks include ulceration and perforation of the nasal septum, pulmonary

3    edema, and allergic asthma.   Symptoms of sodium chromate inhalation include sore

4    throat, coughing, shortness of breath, and labored breathing.

5    10.   The leaks caused by cracks and pits in the boiler tube assembly of Dometic-branded

6    gas absorption refrigerators allow the toxic and carcinogenic sodium chromate to be

7    released at high pressure into the refrigerator cabinet, and from there, into the living

8    space of an RV or boat.   These leaks  also allow the highly flammable cooling

9    solution  - ammonia and hydrogen gas - to leak from the cooling unit in the area of

10    the electric heaters and propane pilot light, both of which are competent ignition

11    sources.   The hydrogen gas, in particular, is extremely flammable and explosive, and

12    can be detonated by a high pressure release from a crack in the boiler tube wall in the

13    absence of any other ignition source.   Further, when the solution in the cooling unit

14    is reduced by as little as twenty percent (20%), the cooling unit can experience a

15    "run-away heating event" that causes the steel tubing to reach temperatures in excess

16    of 1000 degrees Fahrenheit, resulting in leaks in the boiler tube and fires, either by

17    ignition of the escaping flammable gases, or by ignition of the combustible

18    unprotected wood inside the refrigerator compartment.  The Defendants concede that

19    such leaks in their gas absorption refrigerator cooling units  carry the risk of "injury

20    or death" to individuals using their products as designed and intended, and for a

21    reasonably foreseeable purpose.

22    11.   In addition to the failure of the cooling unit tubing of Defendants gas absorption

23    refrigerators described above, Defendants' 6, 8, 9.2 and 12 cu. ft. gas absorption

24    refrigerators' cooling units also contain further design/manufacturing defects,

25    including, but not limited to, a "safety fuse." The safety fuse is a plug made of low

26    melting point tin-bismuth alloy that is inserted into the end of a threaded tube in the

27    solution tank.   The safety fuse is designed to melt and "blow out" at relatively low

28

1    temperatures (less than 300 degrees Fahrenheit), thereby depressurizing the cooling

2    unit before it ruptures.  However, the safety fuse plug operates on temperature and not

3    on pressure, making it wholly ineffective as a pressure relief system, i.e. it does not

4    prevent the cooling unit from rupturing due to high pressure.  Further, when the safety

5    fuse "blows out" because it is exposed to heat - as in a fire - it releases the cooling

6    solution into the enclosed space of the refrigerator compartment at over 450 p.s.i.,

7    creating a cloud of highly flammable ammonia and hydrogen gas - as well as toxic

8    and carcinogenic sodium chromate - which permeates the living space of an RV

9    and/or boat, and is then inhaled by anyone present, and/or ignited by any available

10   ignition source.  The effect of this "safety" device - when operating as designed - is

11   to expose occupants of an RV or boat to dangerous and toxic substances, and either

12   to initiate a fire where none existed, or make a small fire much worse.  This is a

13   common defect present in all of Defendants' 6, 8, 9.2 and 12 cu. ft. gas absorption

14   refrigerators, including the REFRIGERATOR.

15   12.   The defects inherent in the design of Defendants' 6, 8, 9.2 and 12 cu. ft. Dometic-

16        branded gas absorption refrigerators created serious safety risks to users of

17        Defendants' products, including Plaintiff.  The ammonia contained in the cooling unit

18        is toxic, and if inhaled, will cause serious respiratory injury.  The hydrogen gas in the

19        cooling unit is not only explosively flammable, but acts as an asphyxiate, i.e.

20        inhalation carries the serious risk of suffocation and death.  The sodium chromate is

21        a known carcinogen that may be fatal if absorbed through the skin or inhaled, and at

22        the least causes serious respiratory injury.   When released at high pressure due to a

23        cooling unit leak, it creates a toxic cloud that permeates all porous surfaces and

24        materials in and around the failed refrigerator, including the living spaces within the

25        RV or boat.    The extreme flammability of the ammonia and hydrogen gases

26        contained in the cooling unit also pose a serious safety risk to any person or property

27        in the vicinity of the recreational vehicle or boat, in that the high pressure release of

28

7

1   these gases can be ignited by any competent ignition source, including self-ignition

2   by the high pressure release itself.   The resulting refrigerator fires are difficult to

3   extinguish due to the escape of flammable gases under high pressure, and can expand

4   quickly outside the RV in both vertical and horizontal jets of flame to structures, other

5   vehicles and people nearby.

6   13.   At all times mentioned herein, Defendants had actual knowledge of the existence of

7   the above-described design and manufacturing defects, and of the serious safety risks

8   owners of Defendants' gas absorption refrigerators unknowingly faced each time they

9   used the product in a reasonably foreseeable manner.   Defendants also had actual

10   knowledge, at all times mentioned herein, of safer alternative designs that would

11   render their gas absorption refrigerators safe to use for their intended purpose.

12   Notwithstanding this knowledge, the Defendants, and each of them, failed and refused

13   to modify the design of their Dometic-branded gas absorption refrigerators and

14   cooling units to eliminate or decrease the substantial safety risks inherent therein.

15   14.   Defendants, and each of them, at all times herein mentioned, had a duty to provide

16   adequate instructions and warnings to owners of RVs and boats into which Dometic-

17   branded gas absorption refrigerators were installed regarding risks inherent in the use

18   of said products.  Defendants, and each of them, failed and refused to provide owners

19   of Dometic-branded gas absorption refrigerators, including plaintiff,  with any

20   instruction or warning regarding the defects inherent in Defendants' products, either

21   at the time of original sale, or thereafter.   Rather, Defendants, and each of them,

22   engaged in a consistent, unified and intentional effort to conceal and/or minimize the

23   defects and risks inherent in their gas absorption refrigerators through a series of

24   stratagems involving deception, omission of material fact and fraudulent concealment.

25   Examples include, but are not limited to, concealment of the failure and fire claim

26   history of Dometic-branded gas absorption refrigerators; misrepresenting the

27   refrigerators to be safe and free of defects; and conducting untimely, inadequate and

28

8

**COMPLAINT FOR DAMAGES**
**Cherry  vs. Dometic Corporation.**

1   ineffective manufacturer-initiated product recalls in 2006 and 2008 which grossly

2   misstated the nature of the risk, and employed retrofit devices that neither addressed

3   the root cause of refrigerator boiler tube failure, nor rendered the refrigerators safe to

4   use for their intended purpose.

5   15.   The Defendants, and each of them, at all times joined together to engage in the above-

6   described pattern and practice of deception, concealment and fraud for the purpose

7   of misleading federal regulators to avoid scrutiny of the safety risks inherent in their

8   products, and to conceal the defects and risks from consumers in order to continue to

9   distribute and sell their defective gas absorption refrigerators into the American

10   market.   Said pattern and practice was at all times known, approved, ratified and

11   condoned by the Defendants, and each of them, and was the result of a conscious

12   business decision by Defendants to place profits from the sale of dangerously

13   defective refrigerators over the safety of owners of RV's and boats containing the

14   refrigerators, and the general public.   Said pattern and practice was also the result of

15   a conscious business decision by the Defendants, and each of them, that it was

16   cheaper to quietly pay off personal injury and property damage claims caused by their

17   defective gas absorption refrigerators as they arose, rather than invest the time and

18   money into redesigning or retrofitting their gas absorption refrigerators so that they

19   could be operated safely, and fail benignly.

20   16.   Between 2000 and 2015, Defendants admit that they have received at least 1,466

21   claims involving failures and/or fires in their gas absorption refrigerators, an average

22   rate of 2 new claims per week, resulting in personal injury and property damage

23   claims in excess of $100,000,000.00.   Plaintiff is informed and believes, and thereon

24   alleges, that the failure/fire claim rate of Defendants' Dometic-branded gas absorption

25   refrigerators has continued at least at this same rate through the date of filing of this

26   Complaint.

27

28

**COMPLAINT FOR DAMAGES**
Cherry  vs. Dometic Corporation.

## FIRST CAUSE OF ACTION

### (Strict Products Liability)

17.  Plaintiff reallege and incorporate herein by this reference each and every allegation contained in Paragraphs 1-16, supra., as if fully set forth herein.

18.  On or about 2006, Plaintiff TIMOTHY CHERRY purchased a 2007 model year Weekend Warrior FSW 3200 toy hauler (previously described herein as the "RV"). The RV contained, as original equipment, a Dometic-branded RM 2852 gas absorption refrigerator (previously described herein as the "REFRIGERATOR"). The REFRIGERATOR was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants, and each of them.

19.  Plaintiff, at all times herein mentioned, used his RV, and the REFRIGERATOR contained therein, in a way that was reasonably foreseeable to Defendants.   Plaintiff did not make any alterations or modifications to the REFRIGERATOR.   Plaintiff is informed and believe and thereon allege that the REFRIGERATOR was, at all times mentioned herein, substantially the same as when it left Defendants', and each of their, possession.

20.  The REFRIGERATOR contained manufacturing and design defects when it left defendants' possession that created a product that was 1). different from that intended by the defendants; 2). did not perform as safely as an ordinary consumer would have expected; and 3). used a design whose risks outweighed its benefits.

21.  The REFRIGERATOR had potential risks, including but not limited to a propensity to fail, leak flammable, toxic and carcinogenic gases and substances, and cause a fire, that were known by the Defendants, and each of them, at the time the REFRIGERATOR was designed, manufactured, distributed and/or sold, or which were knowable by said Defendants by the use of then available scientific knowledge. The REFRIGERATOR's potential risks presented a substantial danger to users of the

10

1   REFRIGERATOR, including Plaintiff, and each of them.   The potential risks of
2   using the REFRIGERATOR would not have been recognized by an ordinary
3   consumer, and were not recognized by Plaintiff.

4   22.   Notwithstanding their actual knowledge of the potential risks of using the
5   REFRIGERATOR, and their actual knowledge of the failure and fire claim history
6   of their Dometic-branded gas absorption refrigerators, Defendants, and each of
7   them, failed to adequately warn or instruct Plaintiff regarding the potential risks of
8   use of the REFRIGERATOR, either at the time of sale or thereafter.

9   23.   On or about April 28, 2016, Plaintiff was sleeping in his RV in Castaic, California.
10   The RV was parked, and hooked to shore power.   While Plaintiff was sleeping, the
11   REFRIGERATOR failed due to a crack in the cooling unit boiler tube assembly,
12   causing a leak of ammonia, hydrogen gas and sodium chromate at high pressure into
13   the refrigerator cabinet, and from there into the living space of the RV.   Plaintiff
14   woke because he was having trouble breathing, and his throat was burning and dry.
15   He also noticed that his chest was tight, his nose was burning, and he was short of
16   breath.   When Plaintiff opened the door into the main kitchen area of the RV, he was
17   immediately hit with an overpowering smell of ammonia, which forced him out of the
18   RV due to not being able to breath.

19   22.   The RV was rendered uninhabitable due to the ammonia leak, and was contaminated
20   with sodium chromate.   Plaintiff, a Los Angeles County Sheriff's rescue diver,
21   sustained physical injury to his lungs and respiratory system proximately caused by
22   his exposure to and inhalation of the toxic and carcinogenic substances released by
23   Defendants' defective gas absorption refrigerator.   Plaintiff's injuries required
24   medical treatment, and prevented him from performing his usual occupation.
25   Plaintiffs' exposure and inhalation of toxic and carcinogenic substances will require
26   future medical treatment, including, but not limited to, medical monitoring costs.
27   Plaintiff also suffered severe emotional distress as a result of the REFRIGERATOR's
28

11

1    failure and leak of toxic and carcinogenic gases and substances. Plaintiff was

2    compelled to incur out-of-pocket expenses as a result of the failure of the

3    REFRIGERATOR, as well as damage/destruction to his personal property and

4    diminution in value/loss of use of his RV.   Plaintiff is informed and believes and

5    thereon alleges that the REFRIGERATOR's failure and leak of toxic and

6    carcinogenic gases and substances, and the injuries and damages to Plaintiff, were the

7    direct and proximate result of the defects in the design and/or manufacture of the

8    REFRIGERATOR and/or the failure to adequately instruct or warn of the risks of use

9    thereof, by Defendants, and each of them, as described herein.

10   23.   As a direct and proximate result of the Defendants, and each of them, designing,

11   manufacturing, selling, distributing and putting into the stream of commerce the

12   defectively designed and/or manufactured REFRIGERATOR, and/or the failure to

13   adequately instruct or warn of the risks of use thereof, the Plaintiff is entitled to

14   damages, as set forth below, the exact amount of which will be established at trial

15   according to proof.

16   24.   Since at least 2000, the Defendants, and each of them, had actual knowledge of

17   design and manufacturing defects in their gas absorption refrigerators that created a

18   propensity for the products to leak toxic and carcinogenic gases and substances and

19   cause fires when used in a reasonably foreseeable manner.   As of April 28, 2016,

20   Defendants, and each of them, had actual knowledge of over 1,500 claims involving

21   failures and fires in their gas absorption refrigerators.   As of April 28, 2016,

22   Defendants, and each of them, had actual knowledge that their campaigns to retrofit

23   their gas absorption refrigerators were inadequate, incomplete, and that the external

24   devices to cut off electric power to the units did not prevent the units from cracking

25   and leaking flammable and toxic gases and substances, or igniting fires, and therefore

26   failed to render the Dometic-branded refrigerators safe to use for their intended

27   purpose.   Defendants, and each of them, knew - but concealed - that their gas

28

12

COMPLAINT FOR DAMAGES
Cherry vs. Dometic Corporation.

1  absorption refrigerators continued to fail due to the above-described design and/or

2  manufacturing defects, exposing owners and the general public to toxic and

3  carcinogenic substances and fires, in spite of the retrofits.   Notwithstanding their

4  actual knowledge of the defects present in their products, and the risk of serious

5  injury and death inherent in the foreseeable use of their products, the Defendants, and

6  each of them, failed to correct the defects and eliminate the potential risks to

7  individuals using their product, including Plaintiff.   Defendants further failed to

8  otherwise notify or warn Plaintiff of the known risks and dangers inherent in the use

9  of the REFRIGERATOR.   As a direct and proximate result of the Defendants'

10 conduct, Plaintiff continued to use the REFRIGERATOR, unaware of the risks and

11 dangers, until it failed, causing the Plaintiff severe injuries and damages, as alleged

12 herein.   The Defendants', and each of their, conduct was despicable, and was in

13 conscious disregard for the rights and safety of others, including Plaintiff, therefore

14 entitling Plaintiff to an award of punitive damages according to proof at trial.

15 WHEREFORE, Plaintiffs pray judgment as set forth below.

16                    **SECOND CAUSE OF ACTION**

17                          **(Negligence)**

18 25.  Plaintiffs reallege and incorporate herein by this reference each and every allegation

19      of Paragraphs 1 - 24as if fully set forth herein.

20 26.  The Defendants, and each of them,  had a duty to Plaintiffs to use the amount of care

21      a reasonably careful designer, manufacturer, distributor, supplier and/or installer

22      would use in the design, manufacture, distribution, supply, and installation of the

23      REFRIGERATOR to avoid exposing Plaintiff to a foreseeable risk of harm.   The

24      Defendants, and each of them, also had a duty to Plaintiff to use reasonable care to

25      warn Plaintiffs at the time of sale about risks or dangers regarding the use of the

26      REFRIGERATOR, or facts that made the REFRIGERATOR likely to be dangerous,

27      and of which defendants knew, or reasonably should have known, the Plaintiff was

28

13

1   unaware.

2   27.   The Defendants, and each of them, breached their duty to Plaintiff by failing to use

3   reasonable care in the design, manufacture, distribution, supply and installation of the

4   REFRIGERATOR.

5   28.   Defendants, and each of them, knew or should have known that the Plaintiff was

6   unaware of the risks and dangers of the use of the REFRIGERATOR, and the facts

7   that made the REFRIGERATOR likely to be dangerous, but breached their duty to

8   Plaintiff by failing to use reasonable care to adequately instruct or warn Plaintiff

9   thereof.

10   29.   As a direct and proximate result of the defendants' breach of duty to Plaintiffs, and

11   each of them, described above, Plaintiff has been damaged as set forth herein in an

12   exact amount which will be established at trial according to proof.

13   30.   Since at least 2000, the Defendants, and each of them, had actual knowledge of design

14   and manufacturing defects in their gas absorption refrigerators that created a

15   propensity for the products to leak toxic and carcinogenic gases and substances and

16   cause fires when used in a reasonably foreseeable manner.   As of April 28, 2016,

17   Defendants, and each of them, had actual knowledge of over 1,500 claims involving

18   failures and fires in their gas absorption refrigerators.   As of April 28, 2016,

19   Defendants, and each of them, had actual knowledge that their campaigns to retrofit

20   their gas absorption refrigerators were inadequate, incomplete, and that the external

21   devices to cut off electric power to the units did not prevent the units from cracking

22   and leaking flammable and toxic gases and substances, or igniting fires, and therefore

23   failed to render the Dometic-branded refrigerators safe to use for their intended

24   purpose.   Defendants, and each of them, knew - but concealed - that their gas

25   absorption refrigerators continued to fail due to the above-described design and/or

26   manufacturing defects, exposing owners and the general public to toxic and

27   carcinogenic substances and fires, in spite of the retrofits.   Notwithstanding their

28

actual knowledge of the defects present in their products, and the risk of serious injury and death inherent in the foreseeable use of their products, the Defendants, and each of them, failed to correct the defects and eliminate the potential risks to individuals using their product, including Plaintiff.   Defendants further failed to otherwise notify or warn Plaintiff of the known risks and dangers inherent in the use of the REFRIGERATOR.   As a direct and proximate result of the Defendants' conduct, Plaintiff continued to use the REFRIGERATOR, unaware of the risks and dangers, until it failed, causing the Plaintiff severe injuries and damages, as alleged herein.   The Defendants', and each of their, conduct was despicable, and was in conscious disregard for the rights and safety of others, including Plaintiff, therefore entitling Plaintiff to an award of punitive damages according to proof at trial.

WHEREFORE, Plaintiffs pray judgment as set forth below.

### THIRD CAUSE OF ACTION

### (Negligence - Post Sale Duty to Warn)

31.   Plaintiff reallege and incorporate herein by this reference each and every allegation of Paragraphs 1 - 30 as if fully set forth herein.

32.   The Defendants, and each of them, had a duty to warn Plaintiff of risks and/or dangerous   propensities in their gas absorption refrigerators,   including the REFRIGERATOR,   that they became aware of after their product was placed into the stream of commerce.

33.   The Defendants, and each of them, knew or should have known that their gas absorption refrigerators, including the REFRIGERATOR, had a propensity to fail, leak toxic and carcinogenic substances, and ignite dangerous fires after placed into the stream of commerce, and used in a reasonably foreseeable manner.

34.   Defendants, and each of them, breached their duty to Plaintiff by failing to warn Plaintiff of the dangerous propensities of the REFRIGERATOR prior to April 28, 2016.

15

35.   As a direct and proximate result of the Defendants' breach of duty to Plaintiff, and each of them, described above, Plaintiff have been damaged as set forth herein in an exact amount which will be established at trial according to proof.

36.   Since at least 2000, the Defendants, and each of them, had actual knowledge of design and manufacturing defects in their gas absorption refrigerators that created a propensity for the products to leak toxic and carcinogenic gases and substances and cause fires when used in a reasonably foreseeable manner.   As of April 28, 2016, Defendants, and each of them, had actual knowledge of over 1,500 claims involving failures and fires in their gas absorption refrigerators.   As of April 28, 2016, Defendants, and each of them, had actual knowledge that their campaigns to retrofit their gas absorption refrigerators were inadequate, incomplete, and that the external devices to cut off electric power to the units did not prevent the units from cracking and leaking flammable and toxic gases and substances, or igniting fires, and therefore failed to render the Dometic-branded refrigerators safe to use for their intended purpose.   Defendants, and each of them, knew - but concealed - that their gas absorption refrigerators continued to fail due to the above-described design and/or manufacturing defects, exposing owners and the general public to toxic and carcinogenic substances and fires, in spite of the retrofits.   Notwithstanding their actual knowledge of the defects present in their products, and the risk of serious injury and death inherent in the foreseeable use of their products, the Defendants, and each of them, failed to correct the defects and eliminate the potential risks to individuals using their product, including Plaintiff.   Defendants further failed to otherwise notify or warn Plaintiff of the known risks and dangers inherent in the use of the REFRIGERATOR.   As a direct and proximate result of the Defendants' conduct, Plaintiff continued to use the REFRIGERATOR, unaware of the risks and dangers, until it failed, causing the Plaintiff severe injuries and damages, as alleged herein.   The Defendants', and each of their, conduct was despicable, and was in

1  conscious disregard for the rights and safety of others, including Plaintiff, therefore

2  entitling Plaintiff to an award of punitive damages according to proof at trial.

3  WHEREFORE, Plaintiffs pray judgment as set forth below.

4  **FOURTH CAUSE OF ACTION**

5  **(Negligence - Post Sale Duty to Recall/Retrofit)**

6  37.  Plaintiffs reallege and incorporate herein by this reference each and every allegation

7  of Paragraphs 1 - 36 as if fully set forth herein.

8  38.  The Defendants, and each of them, had a duty to recall or retrofit the

9  REFRIGERATOR once the Defendants knew, or should have known, that the

10  REFRIGERATOR was dangerous or was likely to be dangerous when used in a

11  reasonably foreseeable manner.

12  39.  Defendants, and each of them, knew or should have known that the

13  REFRIGERATOR was so defectively designed, manufactured, supplied and/or

14  installed as to be dangerous, or likely to be dangerous, when used in a reasonably

15  foreseeable manner, but breached their duty to Plaintiff by failing to conduct a timely,

16  comprehensive, effective and/or adequate recall and/or retrofit campaign.

17  40.  As a direct and proximate result of the defendants' breach of duty to Plaintiff, and

18  each of them, described above, Plaintiff has been damaged as set forth herein in an

19  exact amount which will be established at trial according to proof.

20  41.  Since at least 2000, the Defendants, and each of them, had actual knowledge of

21  design and manufacturing defects in their gas absorption refrigerators that created a

22  propensity for the products to leak toxic and carcinogenic gases and substances and

23  cause fires when used in a reasonably foreseeable manner.   As of April 28, 2016,

24  Defendants, and each of them, had actual knowledge of over 1,500 claims involving

25  failures and fires in their gas absorption refrigerators.   As of April 28, 2016,

26  Defendants, and each of them, had actual knowledge that their campaigns to retrofit

27  their gas absorption refrigerators were inadequate, incomplete, and that the external

28

devices to cut off electric power to the units did not prevent the units from cracking and leaking flammable and toxic gases and substances, or igniting fires, and therefore failed to render the Dometic-branded refrigerators safe to use for their intended purpose.   Defendants, and each of them, knew - but concealed - that their gas absorption refrigerators continued to fail due to the above-described design and/or manufacturing defects, exposing owners and the general public to toxic and carcinogenic substances and fires, in spite of the retrofits.   Notwithstanding their actual knowledge of the defects present in their products, and the risk of serious injury and death inherent in the foreseeable use of their products, the Defendants, and each of them, failed to correct the defects and eliminate the potential risks to individuals using their product, including Plaintiff.   Defendants further failed to otherwise notify or warn Plaintiff of the known risks and dangers inherent in the use of the REFRIGERATOR.   As a direct and proximate result of the Defendants' conduct, Plaintiff continued to use the REFRIGERATOR, unaware of the risks and dangers, until it failed, causing the Plaintiff severe injuries and damages, as alleged herein.   The Defendants', and each of their, conduct was despicable, and was in conscious disregard for the rights and safety of others, including Plaintiff, therefore entitling Plaintiff to an award of punitive damages according to proof at trial.

WHEREFORE, Plaintiff prays judgment as set forth below.

## COUNT V

### (Negligence Per Se)

42.   Plaintiffs re-allege and incorporate herein paragraphs 1 through 41 as if fully set forth herein.

43.   The Defendants' Dometic-branded gas absorption refrigerators, including the REFRIGERATOR, are motor vehicle "equipment" subject to the jurisdiction of the National Highway and Traffic Safety Administration (NHTSA).   Pursuant to USC § 30118© and 49 C.F.R. §§ 573.3(e)(f), 573.6(a), the Defendants, and each of them,

18

1    had a statutory duty to report potential safety related defects in their gas absorption

2    refrigerators to NHTSA within five (5) days of a good faith determination of their

3    existence, and to initiate a comprehensive and effective recall/retrofit campaign to

4    eliminate said safety related defects.    Pursuant to 49 U.S.C. §§ 30166© and

5    30166(e), the Defendants, and each of them, also had a statutory duty to provide

6    timely, accurate, and complete information to NHTSA regarding said product safety

7    recalls, and/or in response to requests in connection with the investigation of potential

8    risks to safety.

9    44.   The purpose of the above-described statutory scheme was and is to impose a duty

10    upon equipment manufacturers to monitor, identify and eliminate potential risks to

11    safety created by their products through manufacturer-initiated recall and retrofit

12    campaigns, and to thereby protect the lives and property of owners of defective

13    products affecting motor vehicle safety, and the general public.

14    45.   The Defendants, and each of them, knew or should have known that their gas

15    absorption refrigerators, including the REFRIGERATOR, were so defectively

16    designed, manufactured, supplied and/or installed as to be dangerous, or likely to be

17    dangerous, when used in a reasonably foreseeable manner, but violated the

18    above-described statutory scheme by failing and refusing to conduct a timely,

19    comprehensive and effective recall and retrofit campaign to eliminate the safety risks

20    to owners and the general public inherent in their gas absorption refrigerators,

21    including the Refrigerator, as set forth herein.

22    46.   Plaintiff is a member of the class of persons the above-described statutory scheme

23    was designed to protect.

24    47.   Plaintiffs' damages, as set forth herein, were the direct, legal and proximate result of

25    the Defendants', and each of their, violation of the above-described statutory scheme

26    requiring said defendants to initiate and prosecute a timely, comprehensive and

27    effective recall and retrofit campaign.   The exact amount of Plaintiffs' damages will

28

**COMPLAINT FOR DAMAGES**
**Cherry  vs. Dometic Corporation.**

1    be established at trial according to proof.

2        WHEREFORE, Plaintiff prays judgment against the Defendants, and each of them,

3    jointly and severally, as follows:

4    1.    For compensatory damages for destruction and/or damage, diminution in value and/or

5          loss of use of personal property, according to proof;

6    2.    For compensatory damages for bodily injury and emotional distress, including, but

7          not limited to, hospital and medical expenses, and costs for continuing medical

8          monitoring, according to proof;

9    3.    For wage loss and/or loss of earning capacity;

10   4.    For general damages, according to proof;

11   5.    For punitive damages according to proof;

12   6.    For pre-judgment interest at the legal rate according to proof;

13   7.    For such other and further relief as the Court may deem proper.

14

15

16   DATED:     September 11, 2017     _____

17                                    TERRENCE A. BEARD

18                                    Attorney for Plaintiff TIMOTHY CHERRY

19

20

21

22

23

24

25

26

27

28
                                     20